```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-20-15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

THE LAW OFFICES OF BRUCE E.
BALDINGER, LLC,

          *Plaintiff*,

  -against-

SAILES BARCHHA, ALKA BARCHHA, and
BROKERAGE ACCOUNTS 1-3,

          *Defendants*.

------------------------------------------------------------X

13 cv 9124 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

The Law Offices of Bruce E. Baldinger, LLC ("Plaintiff") brings this action against Sailes Barchha (individually, "Defendant"), his wife, Alka Barchha, and Brokerage Accounts 1-3[1] (collectively, "Defendants") for failing to pay Plaintiff's attorney fees and for secretly transferring the funds owed to offshore accounts and trusts.

Plaintiff initially filed this action against Defendants in the District of New Jersey, claiming (1) breach of contract; (2) accounts stated; (3) intentional fraudulent transfer; (4) constructive fraudulent transfer; and (5) unjust enrichment. On December 17, 2013, the District of New Jersey granted the Defendants' motion to transfer the action to this District.[2] On April 3, 2014, the Court denied Defendants' motion to dismiss. Summ. Order, ECF No. 55 (Apr. 3, 2014).

---

[1] Brokerage Accounts 1-3 are fictitious names for brokerage accounts owned by Defendant Sailes Barchha and Defendant Alka Barchha, the identities of which are unknown to Plaintiff. Compl. ¶ 5. These accounts or institutions have not been served.

[2] This Court has diversity jurisdiction because Plaintiff is a New Jersey company, Defendants are citizens of the United Kingdom, and Plaintiff's claims exceed $75,000. *See* 28 U.S.C. § 1332(a)(2). Since the case was transferred under 28 U.S.C. § 1406, the Court applies New York state law to Plaintiff's claims. *See Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010).

Defendants now move for summary judgment regarding the entirety of Plaintiff's claims. Plaintiff cross moves for partial summary judgment regarding its breach of contract claim and its two fraudulent transfer claims. For the reasons below, Defendants' motion for summary judgment is DENIED and Plaintiff's motion for partial summary judgment is GRANTED.

## BACKGROUND

On October 4, 2012, Defendant retained the Plaintiff law firm to pursue a claim against TapImmune Corporation for the recovery of 5.6 million TapImmune shares owed to Defendant. Defs.' R. 56.1 Statement ¶ 1. The retainer agreement, signed by both parties, contained the following terms:

- Defendant will pay a "flat fee" comprised of "the first $100,000 realized" from the sale of Defendant's TapImmune shares;

- Defendant will pay a $5,000 "undertaking fee" should Defendant elect to proceed with arbitration;

- Defendant will pay a "separate $5,000 retainer" against Plaintiff's regular hourly fees should Defendant wish to bring any preliminary restraints against TapImmune in federal court; and

- Defendant will pay Plaintiff's "regular hourly rate of $400 per hour" if Defendant wishes to bring any other collateral action or appeal or if this matter involves any other jurisdiction.

Baldinger Decl. in Supp., Ex. A. The parties' retainer agreement also provided that Plaintiff would render monthly bills, with 1% interest accruing on unpaid balances after thirty days, and permitted Defendant to terminate representation "at any time [Defendant] see[s] fit for any

reason." *Id.*

On November 21, 2012, Plaintiff filed an action against TapImmune, seeking the release of Defendant's 5.6 million shares, worth approximately $0.10 per share. Defs.' R. 56.1 Statement ¶¶ 4-5. After failing to obtain an injunction against TapImmune, Plaintiff voluntarily dismissed the action on behalf of Defendant. In the meantime, TapImmune filed for arbitration against Defendant and also sued in federal court. *Id.* at ¶¶ 7-8. Plaintiff represented Defendant in both proceedings. On February 27, 2013, a temporary restraining order ("TRO") was issued in TapImmune's federal action, preventing Defendant from recovering or selling his shares. *Id.* at ¶ 8. The TRO was conditioned on TapImmune posting a $90,000 bond by April 2, 2013. *Id.*

On March 4, 2013, Plaintiff represented Defendant in mediation, reaching a partial settlement with TapImmune. *Id.* at ¶ 9. The settlement, memorialized in the federal court's Stipulation and Order, amended the TRO by (1) requiring that "TapImmune's transfer agent [] transfer 5,600,000 shares by DWAC to [Defendant]'s designated brokerage account," and (2) permitting Defendant "to sell no more than one million (1,000,000) of such shares, with the balance of such shares being enjoined from sale, lien, or other alienation or encumbrance" pursuant to the TRO. Baldinger Decl. in Supp., Ex. B 3.

On March 13, 2013, TapImmune transferred 5.6 million shares to Defendant's brokerage account. Within two weeks, Defendant had sold 877,500 of the 1 million unrestricted shares he was permitted to sell under the settlement agreement, yielding $92,058.90 in proceeds. *Id.* at Ex. P 3. On April 2, 2013, TapImmune failed to post the required bond and the TRO expired, leaving Defendant free to sell his remaining 4.6 million shares. Defs.' R. 56.1 Statement ¶ 11. Although frequently asked, Defendant continuously denied selling any TapImmune shares. Baldinger Decl. in Supp., Exs. J, L. In fact, by June 20, 2013 Defendant had sold all 5.6 million shares for

3

proceeds of $377,735.79, *id.* at Exs. P-S.

Pursuant to the retainer, Plaintiff issued Defendant three invoices, totaling $141,518.15 (excluding interest), of which Defendant paid $34,787.98. *Id.* at Exs. D-F. On June 19, 2013, Plaintiff issued Defendant a summary invoice and a final demand for the outstanding amount, along with a notice of Defendant's right to arbitrate the fee. *Id.* at Ex. F. The following day, Defendant closed his New York brokerage account, *id.* at Ex. T, and began transferring his assets to his wife's account in the United Kingdom, *id.* at Exs. V, W, X, Z, and to the couple's joint account in the Bailiwick of Jersey, *id.* at Exs. U, Y.

On July 25, 2013, Plaintiff initiated its suit for unpaid legal fees against Defendant, naming his wife, Alka Barchha, and the couple's brokerage accounts as co-defendants.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Genuine issues of material fact do not exist if, "after adequate time for discovery and upon motion, [a party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such cases, "Rule 56(c) mandates the entry of summary judgment . . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

Though courts "constru[e] the evidence in the light most favorable to the nonmoving party," *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir.

2005) (quotation omitted), the moving party must prevail "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). And when both parties move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

## II. Defendants' Motion for Summary Judgment

Defendants move for summary judgment regarding the entirety of Plaintiff's claims. Defendants, however, come nowhere close to demonstrating an entitlement to judgment as a matter of law for these claims.

Defendants' evidence consists solely of two declarations: one from Defendant and one from his wife, Alka Barchha. These self-serving declarations directly conflict with the voluminous documentary evidence submitted by Plaintiff. *Compare* S. Barchha Decl. ¶ 14 ("Once the 1 million shares were released, their sale was still restricted."), *with* Baldinger Decl. in Supp., Ex. P 3 (documenting Defendant's sale of 877,500 of these allegedly "restricted" 1 million shares, at $0.10 per share, within two weeks of their release).

Substantively, Defendants' memorandum in support of their motion fails to adequately address Plaintiff's breach of contract claim; it also fails to differentiate between intentional and constructive fraudulent transfers; and it fails to address Plaintiff's claims for accounts stated or unjust enrichment.

Given Defendants' utter failure to adduce any supporting evidence or make any comprehensive argument, Defendants' motion for summary judgment is DENIED.

## III. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment regarding its claims of breach of contract, intentional fraudulent transfer, and constructive fraudulent transfer. For the reasons below, Plaintiff's motion is GRANTED.

### A. Breach of Contract

In support of its motion for summary judgment for its breach of contract claim, Plaintiff demonstrates (1) that a valid contract existed, Baldinger Decl. in Supp., Ex. A; (2) that it performed its obligations under the contract by representing Defendant in his dispute with TapImmune, *id.* at Exs. D-F; and (3) that Defendant breached the contract by failing to pay Plaintiff its $100,000 "flat fee," plus interest, causing damage to Plaintiff. *See First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998); *see also Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994).

Defendants oppose Plaintiff's motion, arguing that Plaintiff failed to satisfy a "condition precedent" to earning the $100,000 "flat fee": namely, securing the release of Defendant's 5.6 million TapImmune shares. But the plain fact is that, by hook or by crook, the shares were released and subsequently sold. Defendants lamely argue that Plaintiff was "unsuccessful" and speculate that the shares were released courtesy of "some serendipitous event." Defs.' Mem. in Opp. 2. Not only do these conclusory statements lack evidentiary support, but they are directly contradicted by Plaintiff's voluminous documentary evidence.[3] Plaintiff correctly notes that "[s]o long as Plaintiff engaged in legal work to recover the stock, and property valued at more than $100,000 was recovered, Plaintiff was entitled to that fee." Pl.'s Reply 5. From October 4, 2012

---

[3] For example, Defendant fails to provide a single piece of evidence indicating any dissatisfaction with Plaintiff's representation or questioning the legal fees owed. Plaintiff, on the other hand, provides numerous emails wherein the parties discuss legal strategies and outstanding legal fees. Baldinger Decl. in Supp., Exs. G-O.

onwards, Plaintiff represented Defendant in his dispute with TapImmune. Had Plaintiff been immediately successful—by receiving a favorable response to the demand letter—Plaintiff would still be entitled to the fee. But much more work was required. Plaintiff filed and defended lawsuits against TapImmune and represented Defendant in mediation, which ultimately culminated in the release of 1 million shares. That the remaining 4.6 million shares were released because of TapImmune's failure to post the required bond does not alter the bottom line: once Defendant's 5.6 million shares were released, Plaintiff's $100,000 flat fee became due.[4]

Defendants also argues that the $100,000 fee was unreasonable.[5] But no evidence exists indicating the fee was "'out of all proportion to the value of the professional services rendered.'" *King v. Fox*, 418 F.3d 121, 134 (2d Cir. 2005) (quoting *Gair v. Peck*, 188 N.Y.S.2d 491, 497 (N.Y. 1959)). Though the value of the shares decreased over time, once realized (and once Plaintiff's fee became due) the shares were worth approximately $564,000, so the agreed upon fee was less than 18% of the anticipated value. While Defendant sold the shares for less, that does not alter this conclusion. Indeed, the reasonableness of the fee is heightened by the inherent risks associated with TapImmune—that despite Plaintiff's work in pursuing and defending claims against TapImmune, and despite Plaintiff's success in securing the release of the shares, TapImmune's share price could have dropped even further, leaving Plaintiff without the agreed (or any) compensation. Therefore, based on the "circumstances of the agreement and the work performed," Plaintiff's fee was reasonable. *See King*, 418 F.3d at 135-36 (noting that there "is no

---

[4] Deng Xiaoping famously remarked that "it doesn't matter if the cat is black or white, as long as it catches the mouse."

[5] In addition, Defendant offers other smokescreens in support of his assertion that Plaintiff failed to secure the release of the 5.6 million shares. First, Defendant argues that since Defendant retained another attorney to work with Plaintiff in securing the release, Plaintiff's role was diminished. But retaining another attorney did not change the parties' retainer agreement. Similarly, Defendant argues that the shares were not in fact released. But Defendant's subsequent sale of all 5.6 million shares proves this argument to be false.

magic number that makes a contingency fee agreement automatically unconscionable" and that courts have upheld fees of 50% based on the work involved).

Since no rational trier of fact could find for Defendants based on the evidence presented, Plaintiff's motion for summary judgment on its breach of contract claim is GRANTED.

### B. Intentional and Constructive Fraudulent Transfer

In support of its motion for summary judgment for its intentional fraudulent transfer claim under N.Y. Debt. & Cred. Law § 276, Plaintiff identifies multiple "badges of fraud," which demonstrate that Defendant's transfer of funds to his wife was made "with actual intent . . . to hinder, delay, or defraud." *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 541 (1994) (defining "badges of fraud" as "objective facts . . . [that] raise a rebuttable presumption of actual fraudulent intent"). "Among these 'badges' are: 1) gross inadequacy of consideration; 2) a close relationship between transferor and transferee; 3) the transferor's insolvency as a result of the conveyance; 4) a questionable transfer not in the ordinary course of business; 5) secrecy in the transfer; and 6) retention of control of the property by the transferor after the conveyance." *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 375 (S.D.N.Y. 2003). Plaintiff also demonstrates constructive fraudulent transfer, pursuant to N.Y. Debt. & Cred. Law § 273, because Defendant was "rendered insolvent" as a result of the transfers.

Defendant received no consideration from his wife in exchange for the transfers. Baldinger Decl. in Supp., Ex. BB 97:7 (when asked whether he received any monetary value for the transfer to Alka Barchha, Defendant answered that "[his] wife is [his] monetary value"); *cf. United States v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994) ("Where the transaction involves family members, moreover, and the transaction was made *without any* tangible consideration, 'a heavier burden is placed upon the grantee to demonstrate fair consideration for the transfer.'"

8

(quoting *Liggio v. Liggio*, 385 N.Y.S.2d 33, 39 (N.Y. App. Div. 1st Dep't 1976))). And under New York law, transfers made without consideration create a presumption of insolvency which the transferor must rebut. *See ACLI Gov't Sec., Inc. v. Rhoades*, 653 F. Supp. 1388, 1393 (S.D.N.Y. 1987) ("When a transfer is made without consideration, the burden of going forward with proof of solvency is on the defendants."). Here, Defendant provides no evidence demonstrating his solvency.[6] The Court, therefore, concludes that Defendant is insolvent for the purposes of §§ 276 and 273. Moreover, the timing of these consideration-free transfers is another indicator of fraud. Defendant emptied his American brokerage account the day after Plaintiff sent its summary invoice and threatened legal action to recover the unpaid fees. *Id.* at Exs. F, T. Defendant's transfers—both selling the shares and transferring the funds to accounts outside the United States—were done without informing Plaintiff; in fact, Defendant repeatedly told Plaintiff that he was not selling any of the shares. *Id.* at Exs. J, L. Finally, in light of the couple's marital relationship, Defendant still has control over the funds through his wife.

Defendants submits a two-sentence opposition to Plaintiff's claim, arguing that Alka Barchha has no "contractual relationship with Plaintiff and owes Plaintiff no duty of any kind." Defs.' Mem. in Opp. 9. Not only is this response plainly insufficient to rebut Plaintiff's well-documented evidence of intentional and constructive fraud, but it also evinces Defendants' (or perhaps their counsel's) failure to appreciate that Alka Barchha is named as a defendant because of her role in concealing funds from Plaintiff—not because she has a contractual relationship with Plaintiff or because she owes Plaintiff a duty.

Even after drawing all inferences in favor of Defendants, Plaintiff's unrebutted evidence

---

[6] To the contrary, during his deposition, Defendant was unable to answer whether his bank account contained funds or whether his house had a mortgage. *See* Baldiner Decl. in Supp., Ex. BB 67:25-73:16.

satisfies both the "clear and convincing" standard required under § 276, *see HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995), and the "preponderance of the evidence" standard required under § 273, *see Lippe*, 249 F. Supp. 2d at 376. Accordingly, Plaintiff's motion for summary judgment on its intentional and constructive fraudulent transfer claims is GRANTED.

## CONCLUSION

Defendants' motion for summary judgment is DENIED. Plaintiff's motion for partial summary judgment is GRANTED and Plaintiff is directed to submit further briefing regarding damages.

Defendant Sailes Barchha and Defendant Alka Barchha are directed to bring the required funds to New York in order to satisfy the judgment pursuant to N.Y. C.P.L.R. § 5225(a). *See Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 553, 540 (N.Y. 2009) ("A New York court has the authority to issue a turnover order pertaining to extraterritorial property, if it has personal jurisdiction over a judgment debtor in possession of the property.").

Dated: New York, New York
      March 20, 2015

SO ORDERED

PAUL A. CROTTY
United States District Judge